UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRITT CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02917-SEB-MPB |
| | ) | |
| GERRIAN, | ) | |
| K. HALL, | ) | |
| D. CALDWELL, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' UNOPPOSED MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Britt Carter, while an inmate at New Castle Correctional Facility ("NCCF"),[1] filed this civil rights action against defendants Officers Gerrian, Hall, and Caldwell on July 16, 2019. Dkt. 1. The complaint alleges that on May 26, 2019, he was subjected to excessive force by these three NCCF officers "including but not limited to, cutting his forearm, punching him in the head, placing restraints on much tighter than necessary, and intentionally dripping blood onto him." *Id.*; *see also* dkt. 10 at 2 (screening entry). The defendants seek resolution of these Eighth Amendment excessive force claims against them through their motion for summary judgment. For the reasons explained below, the defendants' unopposed motion for summary judgment, dkt. [21], is **granted**.

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] According to the Indiana Department of Correction website, Mr. Carter has been transferred to another IDOC facility. Mr. Carter failed to notify the Court of his change of address. On June 3, 2020, the defendants sent Mr. Carter their motion for summary judgment together with all the pleadings and documents related to their motion to his new location at Wabash Valley Correctional Facility. *See* dkt. 27. As the Court discusses in this Entry, Mr. Carter did not file a response.

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

Mr. Carter did not file a response to the motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motion for summary judgment, Mr. Carter conceded to the defendants' version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56-1, of which Mr. Carter was notified. *See* dkt. 25. This does not alter the standard for assessing a Rule 56 motion but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

Further, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). In this case, the Court had the benefit of a video recording which depicted the events at issue. *See* dkts. 24 and 26.

## II. Material Facts

At all times relevant to his complaint, Mr. Carter was an inmate at the NCCF. Dtk. 1 at 12. Mr. Carter was housed in the Annex at NCCF on May 26, 2019, the date of the physical altercation with the NCCF defendant officers. *Id.* "Certain serious events occurring at the NCCF, including offender assaults on staff, are documented through the creation of a Serious Incident Report Workbook ('SIR')[.]" Dkt. 23-1 at 1 (Fitch's Affidavit). A SIR includes "documents, photos, videos, statements, and other evidence related to the serious incident at issue[.]" *Id.* at 2. A SIR was created for the May 26, 2019 incident involving Mr. Carter and the defendants. *Id.* A video from NCCF's surveillance system "captured the moments wherein various correctional officers

noted within the SIR were able to gain control of, compliance from, and mechanically restrain" Mr. Carter to ultimately transport him to NCCF's Restrictive Housing Unit ("RHU"). *Id.* The Court has reviewed both the SIR and video that are part of the record in this case and utilizes this evidence to briefly summarize the details of the physical altercation. *See* dkt. 23-2 (SIR Workbook); dkts. 24 and 26.

On the evening of the incident, Mr. Carter was using the law library computer for legal research before facility count time was called. Dkt. 1 at 13. When Officer Gerrian told Mr. Carter that it was count time and ordered him to lock up, he "became agitated and was getting aggressive towards" her. Dkt. 23-2 at 2 (SIR Description). Officers Hall and Caldwell went to the pod location to assist Officer Gerrian, and Sgt. Hall also gave Mr. Carter a direct order to lock up for count time. *Id.* Mr. Carter "began yelling at Sgt. Hall, and punched Sgt. Hall in the nose with a closed fist." *Id.* A signal 10 was called for additional staff to assist, and the defendants "wrestled" Mr. Carter "to the ground to gain compliance." *Id.* In the process, Mr. Carter "punched Officer Gerrian in the head area and Officer Caldwell in the head area." *Id.* Mr. Carter was finally secured in mechanical restraints by the defendants, and additional officers arrived to assist with taking Mr. Carter to RHU. *Id.* at 2, 25, 28. The defendants refused medical treatment. *Id.* at 2. Mr. Carter was assessed for injuries after the incident, and the medical report noted that he had a scratch or laceration on his right forearm. *Id.* at 10. The defendants' employee incident reports noted their injuries of contusions or bruising and blood, concussion, and head injury. *Id.* at 11-12, 19-24. Photographs in the record document the defendants' injuries. *Id.* at 30-37.

Mr. Carter received three disciplinary conduct reports charging him with Indiana Department of Correction Adult Disciplinary code violations of A-102, battery. *Id.* A true and accurate copy of the disciplinary packet for Mr. Carter related to the disciplinary charges from the

May 26, 2019 incident are in the record. Dkt. 23-3 at 2; dkt. 23-4. Mr. Carter pled guilty to one of the charges on May 31, 2019. Dkt. 23-4 at 5 (report of disciplinary hearing for NCN 19-05-0026). He was found guilty of all three charges after the disciplinary hearing officer reviewed the conduct reports, video, and his statements. *Id.* at 5, 22, 39.

Though Mr. Carter alleges that the defendants used excessive force against him during this altercation, the officers attested that they "used only that force necessary, as shown by the video, to stop the Plaintiff's resistance to the application of mechanical restraints until further officer assistance arrived to assist with [the] transport of the Plaintiff to [RHU]". *See* dkt. 23-5 (Gerrian affidavit); dkt. 23-6 (Caldwell's affidavit).

### III. Discussion

"The Eighth Amendment prohibits prison staff from subjecting inmates to excessive force without a legitimate penological purpose, [and] from deliberately failing to prevent other staff from using unlawful force . . . ." *Wilborn v. Ealey*, 881 F.3d 998, 1001 (7th Cir. 2018).

The defendants argue that they are entitled to judgment as a matter of law because the record before the Court shows that Mr. Carter failed to obey multiple direct orders to submit to mechanical restraints in order to lock up for count time. Dkt. 22 at 6-7. Not only did he fail to comply with direct orders, he became physically aggressive and punched the officers in the face and head regions causing them physical injuries. *Id.* The defendants argue that the confrontation continued until Mr. Carter was finally restrained and that the SIR containing the officers' accounts of the incident is corroborated by the video evidence that exists in this case. *Id.* The defendants argue that the record supports that no excessive force was deployed, and as such, Mr. Carter's Eighth Amendment claims fail as a matter of law. *Id.*

The "core judicial inquiry," in an Eighth Amendment excessive force case, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, at 7, (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm," the Supreme Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Factors relevant to the inquiry regarding whether the defendants' actions were done in a malicious and sadistic manner to cause harm "include the nature and extent of the harm, the need for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994); *see also Hudson*, 503 U.S. at 7 (stating "[i]n determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response") (internal quotations omitted).

The officers' use of force on May 26, 2019, was necessary to gain Mr. Carter's compliance. No reasonable jury could view the video of this incident and come to any other conclusion. Though there are portions of the footage where steel beams of the control room block the camera view, Mr. Carter can be seen charging at the officers from the pod door into the hallway, throwing punches, and continuing to resist the officers even after he is on the ground. The defendants argue that the video shows the officers attempted to attain Mr. Carter's compliance "through holds and restraints and a methodical amount of movement to gain control of one arm at a time in an effort to secure mechanical restraints" upon him. Dkt. 22 at 6-8. The Court agrees and finds that Mr. Carter actively engaged in a struggle with the officers and did not willingly cease resistance or

submit to being restrained. This is consistent with the SIR workbook and the documents in his disciplinary case file.

The use of force may have inflicted a degree of pain, specifically a scratch or laceration on Mr. Carter's forearm, but Mr. Carter did not suffer more pain than was necessary to gain his compliance. A scratch or laceration of the arm may be expected during a scuffle where officers were trying to place Mr. Carter in mechanical restraints by securing one arm at a time. Any pain that Mr. Carter suffered was a direct result of his decision to refuse two direct orders, charge at the officers, and ensue in fighting the officers before and after he was on the ground. Requiring a prisoner to comply with orders, prohibiting threats of physical violence and safely moving an inmate to a cell are all valid penological interests. "Jails are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). The officers involved on May 26, 2019, all applied force in a good-faith effort to maintain or restore discipline and not in a malicious or sadistic manner.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). That is the case here. No excessive force was deployed on May 26, 2019, and all defendants are entitled to summary judgment on the excessive force claim.

### IV. Conclusion

For the reasons explained above, the defendants' unopposed motion for summary judgment, dkt. [21], is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/16/2021

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

7

Distribution:

BRITT CARTER
202081
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com